IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO.   3:19-CV-140-MPM-RP |
| v. | ) ) | |
| VALLEY TOOL, INC. | ) ) | **COMPLAINT** |
| Defendant. | ) ) | |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, (ADA), 42 U.S.C. § 12112 et seq., as amended by the Americans with Disabilities Act Amendments Act, and Title I of the Civil Rights Act of 1991 (CRA), 42 U.S.C. § 1981a, to correct unlawful employment practices based on disability and to provide appropriate relief to Veronica Folson, who was adversely affected by such practices.

As alleged with greater particularity in paragraphs below, Plaintiff Equal Employment Opportunity Commission claims Defendant Valley Tool, Inc. (Defendant Employer), violated the ADA by failing to to provide a reasonable accommodation to Folson; removing Folson from the work schedule, placing Folson on an involuntary leave of absence and then discharging Folson because of her disability; and removing Folson from the work schedule, placing Folson on an involuntary leave of absence and then discharging Folson, all in retaliation for Folson's complaints about comments made by Folson's supervisor about Folson's disability.

Defendant Employer also fails to maintain employee medical records separate from employee personnel files.

## JURISDICTION AND VENUE

1.      The Commission invokes this Court's jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to § 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference § 706(f)(1) and (f)(3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1), (3), and pursuant to § 102 of the CRA, 42 U.S.C. § 1981a.

2.      Defendant Employer committed the employment practices alleged to be unlawful within the jurisdiction of the United States District Court for the Northern  District of Mississippi, Oxford Division.

## PARTIES

3.      The Commission is the agency of the United States charged with administering, interpreting, and enforcing Title I of the ADA and is authorized to bring this action by 42 U.S.C. § 12117(a), which incorporates by reference 42 U.S.C. § 2000e-5(f)(1), (3).

4.      Defendant Employer owns a manufacturing plant located at 101 Industrial Park Road, Water Valley, MS  38965.

5.      At all relevant times, Defendant Employer has been doing business continuously in the State of Mississippi and the City of Water Valley and has at least 15 employees.

6.      At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce under 42 U.S.C. § 12111(5), (7).

7.     At all relevant times, Defendant Employer has been a covered entity under 42 U.S.C. § 12111(2).

<u>ADMINISTRATIVE PROCEDURES</u>

8.     More than thirty days prior to the institution of this lawsuit, Veronica Folson filed a charge of discrimination with the Commission alleging Defendant Employer violated Title I of the ADA.

9.     On December 13, 2018, the Commission issued to Defendant Employer a Letter of Determination, finding reasonable cause to believe Defendant Employer violated the ADA and invited Defendant Employer to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and to provide appropriate relief. The Commission issued an Amended Determination Letter on March 19, 2019.

10.     The Commission engaged in communications with Defendant Employer to provide it the opportunity to remedy the discriminatory practices described in the Letter of Determination.

11.     The Commission was unable to secure from Defendant Employer a conciliation agreement acceptable to the Commission.

12.     On March 21, 2019, the Commission issued to Defendant Employer a Notice of Failure of Conciliation.

13.     The Commission has fulfilled all conditions precedent to the filing of this lawsuit.

STATEMENT OF CLAIMS

**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION**

14.     Since at least April 2017, Defendant Employer engaged in unlawful employment practices in violation of Title I of the ADA, 42 U.S.C. § 12112.

15.     The unlawful employment practices include, failing to provide a reasonable accommodation to Veronica Folson during her employment because of her disability, sickle cell anemia.

    a.     Defendant Employer hired Folson as a sorter on or around March 6, 2017.

    b.     Folson has a disability, sickle cell anemia, a hereditary blood disorder.

    c.     Folson's disability substantially limits the functions of the hemic system.

    d.     Around March 27, 2017, Folson experienced a sickle cell crisis, causing her to take sick leave and miss work.

    e.     Folson returned to work around April 3, 2017, without any restrictions and provided a doctor's statement stating the same.

    f.     On or around April 6, 2017, one of Defendant Employer's supervisor held a team meeting with the sorters.  During the meeting, the supervisor complained about too many employees taking sick leave and returning with doctor's notes, when they did not look ill prior to taking sick leave.

    g.     During the team meeting held on April 6, 2017, Folson voiced her concern about the supervisor's comments.

    h.     Folson further stated she had a "blood disorder" which caused her to become ill and miss work.

    i.     Folson's statement was a request for a reasonable accommodation.

j.   Defendant Employer, however, did not engage in the interactive process to determine what accommodation, if any, Defendant Employer could provide to Folson.

k.   Defendant Employer's supervisor responded, "Blood disorder? If I had known that, I wouldn't have hired you."

l.   The comment upset Folson as she believed the comment was discriminatory. Further, the comment caused Folson to fear that she could lose her job as a sorter.

m.   Folson reported the supervisor's comment to Defendant Employer's president and owner.

n.   Later, around April 12, 2017, the president and owner met with Folson, the supervisor and another supervisor.

o.   During the meeting, Folson reported to the owner and president the comment that the supervisor had made during the team sorter meeting.

p.   The owner and president held another meeting with Folson, the supervisor and the human resources manager.

q.   During the meeting, the president and owner noted that they thought they were "hiring a healthy individual and needed a dependable employee and he did not want an employee who could not perform the job."

r.   At the time, Folson was successfully and satisfactorily performing the sorter job.

s.   The owner and president told Folson from April 12, 2017, Folson could not miss any more work until the expiration of her probationary period and that

Folson needed to get her doctor to complete a form related to her disability.

t.    The president and owner told Folson she could not take any leave despite Folson's admission that she had a disability, a blood disorder.

u.    The president and owner and supervisors made it clear to Folson that Defendant Employer would not provide leave as a reasonable accommodation for Folson's disability.

v.    Folson had already returned to work around March 27, 2017, with a letter from her doctor showing she lacked any restrictions.

16.    The effect of the practices complained of in paragraphs 15 a-v, has been to deprive Folson of equal employment opportunities and otherwise adversely affect her status as an employee because Defendant Employer failed to provide a reasonable accommodation during her employment.

## DISCRIMINATED AGAINST BECAUSE OF HER DISABILITY

17.    Since at least around April 2017, Defendant Employer engaged in unlawful employment practices at its Water Valley, MS  facility in violation of Title I of the ADA, 42 U.S.C. §12112(a).

18.    The unlawful employment practices include removing Folson from the work schedule, placing Folson on an involuntary leave of absence and then discharging Folson all because of her disability.

a.    The Commission incorporates by reference paragraphs 15 a-v.

b.    On or around April 17, 2017, Defendant Employer instructed Folson and several other females not to report to work on April 18, 2017, allegedly due to lack of work.

6

c.      Defendant Employer advised Folson to call thereafter to see if she would need to report to work because work had become available.

d.      When Folson called to check on the availability of work, Defendant Employer's supervisor advised Folson not to report to work until the following week.

e.      When Folson reported to work the following week on her normal shift and attempted to begin work, the supervisor instructed Folson to return home.

f.      Defendant Employer had recalled the other females who lacked a disability to work.

g.      Defendant Employer also hired other employees to work as sorters who lacked a disability.

h.      Defendant Employer never returned Folson to work after April 17, 2017.

i.      When Folson attempted to apply for unemployment compensation with the Mississippi Department of Employment Security (MDES), the MDES denied Folson's claim because Defendant Employer had placed her on a leave of absence.

j.      Around May 16, 2017, Folson's doctor provided a letter stating Folson was under the care of a hematologist; that she lacked any medical restrictions related to her diagnosis; and he had cleared Folson to work without any limitations.

k.      The letter also stated that if one had questions, they could contact the doctor.

l.      Although Defendant Employer received the letter, Defendant Employer

7

refused to return Folson to work.

m.    From April 24, 2017 until October 25, 2017, Folson contacted Defendant
Employer seeking to return to work.

n.    Defendant Employer refused to return Folson to work as a sorter or for any
other position.

o.    Folson's doctor provided another letter to Defendant Employer dated
October 25, 2017.

p.    The letter from Folson's doctor confirmed Folson's statement to Defendant
Employer around April 6, 2017 that Folson had a blood disorder.

q.    The letter from Folson's doctor's dated October 25, 2017, confirmed Folson
lacked any medical restrictions relating to her sickle cell anemia.

r.    The letter from Folson's doctor dated October 25, 2017, confirmed Folson
was cleared to work without restrictions.

s.    Despite receiving the October 25, 2017 letter from Folson's doctor,
Defendant Employer refused to return Folson to work.

19.    The effect of the practices complained of in paragraphs 18 a-s above, has
been to deprive Folson of equal employment opportunities and otherwise adversely affect
her status as an employee because of her disability.

## RETALIATED AGAINST BECAUSE OF HER COMPLAINTS ABOUT
## HER SUPERVISOR'S COMMENT REGARDING HER DISABILITY

20.    Since at least around April 17, 2017, Defendant Employer engaged in
unlawful employment practices at its Water Valley, MS facility in violation of Title I of the
ADA, 42 U.S.C. § 12203.

21.    The unlawful employment practices include removing Folson from the work

schedule, placing Folson on an involuntary leave of absence and then discharging Folson all in retaliation for her complaints about her supervisor's statement about her disability.

a. The Commission incorporates by reference paragraphs 15 a-v and 18 a-s.

b. Defendant Employer had knowledge that Folson had a disability, sickle cell anemia.

c. Defendant Employer had knowledge Folson lodged two complaints about the supervisor's comment, "Blood disorder? If I had known that, I wouldn't have hired you."

d. Defendant Employer had knowledge of Folson's protected activity because of Folson's complaint on April 6, 2017 and April 12, 2017.

e. On April 17, 2017, Defendant Employer instructed Folson and several other females not to report to work on April 18, 2017, allegedly due to lack of work.

f. Defendant Employer advised Folson to call thereafter to see if she would need to report to work because work had become available.

g. When Folson called to check on the availability of work, Defendant Employer's supervisor advised Folson not to report to work until the following week.

h. When Folson reported to work the following week during her normal shift and attempted to begin work, the supervisor instructed Folson to return home.

i. Defendant Employer had recalled to work other females who lacked a disability.

j. Defendant Employer also hired other employees to work as sorters who

lacked a disability.

k.   Defendant Employer took an adverse action against Folson when Defendant Employer removed her from the workplace, placed her on an involuntary leave of absence, and terminated her employment.

l.   Defendant Employer received statements from Folson's doctor that she could work without any restrictions despite Folson's sickle cell anemia.

m.   Defendant Employer refused to return Folson to work.

n.   Defendant Employer never attempted to contact Folson's doctor.

22.   The effect of the policy and practices complained of in the paragraphs 21 a-n above has been to deprive Folson of equal employment opportunities and otherwise adversely affect her ability to remain employed by Defendant Employer.

23.   The unlawful employment practices include Defendant Employer failing to maintain medical information on separate forms and in separate medical files.

a.   The Commission conducted an onsite investigation of Defendant Employer on or around June 6, 2018.

b.   During the onsite investigation, the Commission reviewed personnel files of Defendant Employer as part of its investigation.

c.   The Commission observed medical information placed in the personnel files instead of placement in separate medical files.

d.   Defendant Employer failed to segregate medical and non-medical information on separate forms and in separate medical files in violation of 42 U.S.C. § 12112(d)(3)(B).

24.   The unlawful employment practices complained of in paragraphs 15, 18,

and 21 above were intentional.

25.     The unlawful employment practices complained of in paragraphs 15, 18, and 21 were done with malice or with reckless indifference to the federally protected rights of Folson, who was adversely affected and damaged by such practices.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant Employer, its officers, employees, agents, servants, attorneys, successors, assigns, and all persons in active concert or participation with it, from failing to engage with disabled employees in the interactive process; from failing to provide reasonable accommodations to disabled employees; from discriminating against disabled employees because of their disability; and from retaliating against disabled employees who complain about perceived discrimination.

B.     Order Defendant Employer to institute and carry out appropriate policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities, that eradicate the effects of its past and present unlawful employment practices, and that prohibit Defendant Employer from failing to engage with disabled employees in the interactive process; failing to provide reasonable accommodations to disabled employees; from discriminating against disabled employees because of their disability; and from retaliating against disabled employees for complaining about perceived discrimination;

C.     Order Defendant Employer to make whole Folson by providing, where appropriate, back pay with prejudgment interest, in amounts to be determined at trial,

front pay, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

D.     Order Defendant Employer to make whole Folson by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 15, 18, and 21, including job search expenses, and other expenses, in amounts to be determined at trial;

E.     Order Defendant Employer to make whole Folson by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described in paragraphs 15, 18, and 21, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F.     Order Defendant Employer to pay Folson punitive damages for its malicious and reckless conduct, as described in the foregoing paragraphs, in amounts to be determined at trial;

G.     Grant such further relief as the Court deems necessary, proper, and in the public interest; and

H.     Award the Commission its costs for this action.

Respectfully submitted,

**JAMES L. LEE**
Deputy General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel

*s/ Faye A. Williams*
**FAYE A. WILLIAMS**
TN Bar No. 011730
Regional Attorney

_s/ Markeisha K. Savage_
**MARKEISHA K. SAVAGE**
Trial Attorney
TN Bar No. 024693
Telephone (901) 544-0133
Facsimile (901) 544-0111
markeisha.savage@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Memphis District Office
1407 Union Avenue
Memphis, TN  38104